ORIGINAL

Approved: _____
CHRISTOPHER J. CLORE / ALEXANDER LI
Assistant United States Attorney

Before: THE HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York

19MAG 8198

------------------------------- x

UNITED STATES OF AMERICA

- v. -

JAYSEAN SUTTON, and
PEDRO DAVILA,

Defendants.

------------------------------- x

**SEALED COMPLAINT**

Violations of 18 U.S.C. §§ 1951, and 924(c)(1)(A)(ii)

COUNTY OF OFFENSE: NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

DAVID BONACARTI, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"):

COUNT ONE
(Hobbs Act Robbery)

1. On or about August 25, 2019, in the Southern District of New York and elsewhere, JAYSEAN SUTTON and PEDRO DAVILA," the defendants, and others known and unknown, unlawfully and knowingly did commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, SUTTON and DAVILA robbed a jewelry store at gunpoint in Manhattan, New York.

(Title 18, United States Code, Section 1951.)

COUNT TWO
(Conspiracy to Commit Hobbs Act Robbery)

2.      On or about August 25, 2019, in the Southern District of New York, and elsewhere, JAYSEAN SUTTON and PEDRO DAVILA, the defendants, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, SUTTON and DAVILA, conspired to commit the gunpoint robbery of a jewelry store in Manhattan, New York.

COUNT THREE
(Brandishing of a Firearm)

3.      On or about August 25, 2019, in the Southern District of New York and elsewhere, JAYSEAN SUTTON and PEDRO DAVILA, the defendants, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the robbery charged in Count One of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, which was brandished, and did aid and abet the same, to wit, SUTTON and DAVILA possessed and aided and abetted the possession and brandishing of firearms during the robbery of a jewelry store in Manhattan, New York.

(Title 18, United States Code, Section 924(c)(1)(A)(i), (ii) and 2.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

4.      I am a Detective with the NYPD, and a Task Force Officer in the Joint Bank Robbery / Violent Crimes Task Force (the "Task Force") composed of members of the NYPD and the Federal Bureau of Investigation. I have been personally involved in the investigation of this matter.  This affidavit is based upon my conversations with other law enforcement officers, my examination of reports and records prepared by law enforcement officers, and my involvement in this investigation.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others

2

are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The Jewelry Store Robbery

5. I and other Task Force members and members of the NYPD have been investigating the August 25, 2019 armed robbery of a jewelry store located on West 47th Street in Manhattan, New York ("Store-1"). As set forth below, based on my review of surveillance photographs and videos, as well as documents and records, I have learned that the robbery was committed by three men and, over the course of this investigation, have identified two of those men as JAYSEAN SUTTON and PEDRO DAVILA, the defendants.

6. Based on my conversations with other law enforcement officers and my review of law enforcement reports and surveillance videos and photographs, I have learned, in substance and in part, the following:

a. On or about August 25, 2019, at approximately 11:30 a.m.,[1] three men entered Store-1. One of the men ("CC-1") was dressed in a dark suit and was wearing a dark colored fedora hat. A second man ("CC-2") was dressed in slacks, a dark colored short sleeve shirt, and was wearing a red, white, and gray cloth on his head. The third man ("CC-3") was wearing dark colored sweatpants, a dark colored long-sleeve sweatshirt, and a dark bucket hat. CC-1 and CC-2 were carrying shopping bags, and CC-3 was carrying a duffel bag.

b. At approximately 11:42 a.m., a store employee entered a back room (the "Back Room") with CC-1. Two other employees were already in the Back Room. CC-1 sat down at a white desk located in the rear of the Back Room, and seconds later pulled out a silver handgun. CC-1 stood up, and brandished the gun at the three employees. Using hand motions, CC-1 directed the three employees to lay on the floor.

c. At approximately 11:44 a.m., CC-2 entered the Back Room and stood over the three prone employees. CC-2 waved another silver handgun, which looked similar to the handgun previously brandished by CC-1. CC-1 exited the room, and shortly thereafter reentered with a fourth store employee. CC-1 and CC-2 motioned for the fourth employee to lay on the ground with the other three

---

[1] The timestamp in the surveillance video, which is an hour behind actual time, shows 10:30 a.m.

3

employees. Both CC-1 and CC-2 brandished their guns at the four prone employees.


employees. Both CC-1 and CC-2 brandished their guns at the four prone employees.

d. Beginning at approximately 11:44 a.m., CC-2 and CC-3, who had also entered the Back Room, bound the hands and feet of the four employees using zip ties and duct tape. At the same time, CC-1, CC-2, and CC-3 removed several pieces of jewelry from multiple rooms in Store-1 and placed the jewelry into bags.

e. At approximately 11:47 a.m., CC-1, with a gun in hand, led one of the store employees out of the Back Room into a different room with a safe (the "Safe Room"). The other three employees remained prone in the Back Room. In the Safe Room, CC-1 opened the safe and removed jewelry and other items from the safe. At approximately 11:52 a.m., CC-1 led the employee back into the Back Room, where he rejoined the other three employees on the floor.

f. At approximately 11:58 a.m., CC-1, CC-2, and CC-3 exited the store. Each was carrying one or more bags. Soon thereafter, one of the employees was able to free himself from the restraints and began to free the other employees.

g. The faces of CC-1, CC-2, and CC-3 are clearly visible in the surveillance video.

7. Based on my conversations with other law enforcement officers and my review of reports and records, I know that, on or about August 25, 2019, law enforcement officers interviewed the four store employees described above in Paragraph 6, each of whom provided information concerning the robbery that, in sum and substance, was consistent with the events depicted in the surveillance video and described above.

### Identification of SUTTON and DAVILA

8. Based on my involvement in this investigation, my conversations with law enforcement agents, and my review of reports and records prepared by law enforcement officers, I know the following, in substance and in part:

a. On or about August 26, 2019, one of the store employees present during the armed robbery ("Victim-1") identified DAVILA in a six-pack photo array as a participant in the robbery.

b. On or about August 26, 2019, Victim-1 identified SUTTON in a separate six-pack photo array as another participant in the robbery.

9. I have compared the photographs of PEDRO DAVILA and JAYSEAN SUTTON described above with the surveillance video described in Paragraph 5. Based on my visual inspection, CC-1 is JAYSEAN SUTTON and CC-3 is PEDRO DAVILA.

10. I have spoken with Victim-1, who confirmed that Store-1 sells items that have been manufactured outside of New York State and, further, sells items in interstate and foreign commerce.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrests of JAYSEAN SUTTON and PEDRO DAVILA, the defendants, and that they be imprisoned or bailed, as the case may be.

*[signature]*
DAVID BONACARTI
Detective
NYPD

Sworn to before me this
29th day of August, 2019

*[signature]*
THE HONORABLE KATHERINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5